ROCHESTER SAVINGS BANK, Plaintiff, *v.* STOELTZEN & TAPPER, INC., ROBERT MULREE, DAISY MAY MULREE, His Wife, ALBERT LINK and ANTHONY LINK, JR., Defendants.*

Supreme Court, Monroe County, April 7, 1941.

* See, also, 176 Misc. 147.

*Harris, Beach, Folger, Bacon & Keating* [*Nicholas J. Brown* of counsel], for the plaintiff.

*Block & Smith* [*Wilton A. Block* of counsel], for the defendants Albert Link and Anthony Link, Jr.

VAN VOORHIS, J.   The action is to recover interest on a bond secured by mortgage on real estate.   On November 1, 1920, Bertha Norwich and Adam Norwich gave their bond and mortgage to the plaintiff.   Thereafter they gave their bond and second mortgage covering the same premises to one Alvah F. Stahl, which was subsequently foreclosed.   The purchaser at the foreclosure sale was Joseph H. Oberlies.   Defendants Albert Link and Anthony Link, Jr., for a reason which does not appear, joined with Oberlies in the execution and delivery to the plaintiff of a bond for the payment of the indebtedness represented by the said bond and mortgage given by Bertha and Adam Norwich.   Thereafter Oberlies transferred the premises through mesne conveyances to defendant Stoeltzen & Tapper, Inc., which is the present owner.   Each conveyance provided for the assumption of liability upon the bond given by Oberlies and defendants Link to pay the indebtedness represented by the bond and mortgage given by the Norwiches on November 1, 1920.   Plaintiff proceeds against defendants Link

upon this bond. The nature of the defenses under attack appears in the discussion which follows. They will be dealt with for greater clarity in what is not always their numerical order.

In the Links' " third ". defense it is alleged that the value of plaintiff's mortgage collateral is equal to, or in excess of, the indebtedness secured plus unpaid interest and taxes. This these defendants claim to be entitled to offset under section 1083-b of the Civil Practice Act against plaintiff's cause of action for the interest. The defense is stricken out on authority of *Johnson* v. *Meyer* (268 N. Y. 701); *Rochester Trust & Safe Deposit Co.* v. *Hatch* (273 id. 507); *Union Trust Co. of Rochester* v. *Kaplan* (249 App. Div. 280); *Buell* v. *Sullivan* (250 id. 780); *Werbelovsky* v. *Rosen Bros. News Agency, Inc.* (249 id. 758).

The next three defenses to be considered depend upon suretyship. That is the relation which the Links are alleged to sustain respecting the defendants who have assumed payment from them. The first of these defenses (numbered " second ") states that the Links demanded of the plaintiff on or about October 25, 1939, that it foreclose the mortgage securing the indebtedness to recover interest upon which this action is brought; that no foreclosure action has been commenced; that the mortgaged real estate at the time of the demand was worth more than the amount secured, and that thereafter its market value depreciated due to the non-payment of interest and taxes. Nowhere is it stated how much the premises depreciated, nor that they have become worth less than the amount unpaid upon the mortgage. This omission may have been to avoid jeopardizing the effort to offset the value of the land under section 1083-b, or under section 1083-a of the Civil Practice Act in case plaintiff should decide to foreclose and apply for a deficiency judgment. The essential fact is lacking that after the demand the real property became worth less than the amount secured. (*Union Trust Co. of Rochester* v. *Rogers*, 261 App. Div. 882.) That means that facts are not alleged showing that these defendants were prejudiced as sureties. This defense is stricken from the answer.

The next defense (numbered " first ") is that plaintiff is obliged to exhaust its remedies against the principal and against the land as the primary fund before resorting to the Links as sureties. In the brief it is further stated that plaintiff was required to elect between suing the principal or the sureties. It has been common practice in case of the assumption of bonds and mortgages to sue the surety jointly with the principal, and in advance of foreclosure, if the plaintiff chooses. (*Burden* v. *Shaver*, 255 App Div. 940; *Mahon* v. *Remington*, 256 id. 889; *Albany Exchange Savings Bank*

v *Winne*, 168 Misc. 853; *Marshall* v. *Davies*, 78 N. Y. 414, 422; *Kmetz* v *DeRonde*, 231 id 641; Wiltsie on Mtg. Foreclosures, [5th ed.] 407, § 232.) The general rule is that principal and surety are jointly liable to the creditor. (21 R. C. L 1081, § 123; *Peterson* v. *Miller Rubber Co.*, 24 F. [2d] 59 ) To what extent they may be severally liable also is not at issue The rule has been applied with respect to the kind of suretyship arising from the assumption of debts to third parties. (*Zeiser* v. *Cohn*, 144 App. Div. 825; affd., 207 N. Y. 407.) In that case it was held that where, in consideration of a conveyance, the grantee agrees with the grantor to pay the grantor's debts, a creditor whom the grantee agreed to pay may sue either grantor, or grantee, or both. The court expressly stated that the creditor is not bound to elect to hold either alone. (See, also, *Safford* v. *Levin*, 149 Misc. 384, 388.) It makes no difference that the obligation assumed in *Zeiser* v. *Cohn* was not a bond secured by mortgage Neither was it in *Lawrence* v. *Fox* (20 N. Y. 268), which became the corner stone of the doctrine that mortgagees can hold grantees of mortgaged premises who have assumed payment of bond and mortgage. (*Vrooman* v *Turner*, 69 N. Y. 280; *Seaver* v. *Ransom*, 224 id. 233.) The Supreme Court of Florida made the express statement in *Alabama Florida Co.* v *Mays* (111 Fla 100, 106; 149 So 61, 64) · " He [the mortgagee] may treat both the mortgagor and each successive grantee who assumes the payment of the mortgage debt as principal debtors, or he may proceed against one or more of them, and to the exclusion of the others, either in an action at law or by a proceeding in equity, and may have a personal decree against either or all of the defendants." This is in harmony with the statement repeated in *Peoples Trust Co.* v. *O' Neil* (273 N Y. 312, 316) that the liability of surety to creditor is primary. Plaintiff is not required to proceed against the land before recovering from the sureties by the same token whereby it is not obliged to proceed in the first instance against the principal debtor The " primary fund " doctrine, relied on by these defendants, applies between grantor and grantee ( *Kmetz* v *DeRonde*, *supra*), and arose in cases where the grantee did not assume payment of the mortgage debt To avoid injustice such a grantee is held to have assumed payment to the extent of the value of the land, which is said to have become the primary fund out of which the debt should be paid. The purpose is to enable a mortgagor who has been compelled to meet the obligation after parting with title to recompense himself against the owner of the land who otherwise would be unjustly enriched. (*Murray* v. *Marshall*, 94 N Y 611; *Cohen* v. *Hecht*, 128 App. Div. 511.) This does not qualify the rights of the mortgagee ( *Kmetz* v. *DeRonde*,

*supra; Marshall* v. *Davies, supra),* provided that he does not discharge the mortgagor as surety to the extent of the value of the land *(Murray* v. *Marshall, supra),* and means merely that where there is a conveyance without assumption of the mortgage debt, the land itself becomes the principal debtor. The fact that plaintiff knew that the Links had become sureties is stressed as though it tended to establish these points in their favor. Knowledge of the relationship is material where the question relates to the discharge of sureties as a result of conduct by the creditor prejudicial to them. It would be necessary to sustain the defense that plaintiff did not foreclose after demand. It has nothing to do with whether plaintiff can recover against the Links before exhausting its remedies against the present owner of the land. *(Marshall* v. *Davies, supra.)* In *Wagoner* v. *Brady* (221 App. Div. 405) it was held that the mortgagor had been discharged as surety; but it was expressly stated that without the discharge he could have been held jointly with the grantee who had assumed the mortgage debt. That is the question now — whether these defendants are subject to being sued in this manner as part of their obligation of suretyship. They cannot be prejudiced by being required to perform what they have promised, nor can their liability be canceled or postponed due to plaintiff's knowledge of the length and breadth of it. This defense is insufficient in law.

The next defense involving suretyship (numbered " fifth ") is based upon the deaths of Joseph H. Oberlies and Conrad G. Thompson, his grantee. Plaintiff's remedies against the Links are not altered by the fact that others liable over to them have died. It is true that if compelled to pay, the Links cannot by subrogation pursue the personal representatives of Oberlies and Thompson without foreclosing the mortgage. (Real Prop. Law, § 250; *Levy* v. *Comfort,* 13 N. Y. Supp. [2d] 845; affd., 257 App. Div. 1037; *Doyle* v. *Graves,* 172 Misc. 838.) That, to be sure, would have been unnecessary if Oberlies and Thompson had lived, but it is not sufficient to compel plaintiff to resort to foreclosure in order to proceed against the Links. It is not plaintiff's fault that Oberlies and Thompson have died. Plaintiff's rights and remedies against the surviving joint obligors remain unaffected. Also unimpaired are the substantive rights of the Links against these decedents' estates by subrogation. Only the remedies have been restricted by death, and the privilege of enforcing the restrictions is limited to the decedents' estates. (Real Prop. Law, § 250.) The statute just cited and the underlying equitable principle can be invoked only by those for whose benefit they were designed. The remedy by foreclosure which remains to the Links has been deemed by

the Legislature to be adequate to protect their rights. Plaintiff is not limited to that recourse against living debtors. (Civ. Prac. Act, § 1077-b; *Johnson* v. *Meyer, supra.*) The fact that no contingent claims were filed against Oberlies and Thompson's personal representatives under section 207 of the Surrogate's Court Act is immaterial. Especially is this true in the absence of any allegation that the land subject to the mortgage is worth less than the amount secured. Defendants Link could have filed claims under section 207 of the Surrogate's Court Act as readily as plaintiff. The decedent's personal property can still be traced into the hands of the beneficiaries in the event that a deficiency judgment is obtained. (*Wicks* v. *Carmichael,* 172 Misc. 924.)

It is next alleged that the bond executed by Oberlies and the defendants Link is void as against public policy (Links' " fourth " defense). This bond is stated to be unconscionable in so far as it permits the plaintiff to release any part of the mortgaged premises from the lien of the mortgage, or to change the terms, by agreement with the grantee after the property has been transferred to others and without the consent of the original obligors. No cases in point are cited to sustain this contention. Such provisions are not unknown in similar obligations (*Mutual Life Ins. Co.* v. *Rothschild,* 160 N. Y. Supp. 164; affd., 177 App. Div. 883; affd., 226 N. Y. 599.) In any case, the clauses in the bond which defendants claim render it unconscionable relate to circumstances which have not arisen. If the facts were such as to present the question, and if the clauses objected to were held to be void, the court would not hesitate to hold them to be severable from the rest of the instrument without impairing its central obligation. This defense is likewise stricken out.

Defendants Link have further pleaded in their " sixth " defense that the cause of action against them is barred by the Statute of Limitations. (Civ. Prac. Act, § 47-a.) This section, in effect September 1, 1938, shortened the limitation of actions upon bonds secured by mortgage to six years. Formerly the limitation had been twenty years. (Civ. Prac. Act, § 47.) Subdivision 2 of the new section states that it shall apply to all causes of action theretofore accruing with two exceptions. Defendants Link maintain that the cause of action against them herein does not fall within either exception and became barred by the terms of the act when it took effect. According to the complaint, the cause of action against defendants Link on this bond accrued June 20, 1923. No payments by others can extend the Statute of Limitations against them. (*Peoples Trust Co.* v. *O' Neil, supra; Hoover* v. *Hubbard,* 202 N. Y. 289.) They maintain that they have paid nothing since

the bond became due, and that the Statute of Limitations against them under the old law would have expired June 20, 1943, and that under the new law it was ended on its taking effect September 1, 1938. The difficulty is that so to construe section 47-a of the Civil Practice Act would render it unconstitutional. Although the Legislature can shorten an existing limitation without denying due process of law, it cannot do so without allowing a reasonable time for the commencement of actions after the new act takes effect. Counsel for defendants Link argues that inasmuch as section 47-a of the Civil Practice Act (enacted by Laws of 1938, chap. 499) was signed by the Governor April 6, 1938, and took effect September first of that year, due process of law has been satisfied. The theory is that the plaintiff received notice of the new period of limitation when the statute was adopted and had opportunity to commence action within the four months and twenty-five days before it took effect. Such a doctrine was overruled in *Gilbert* v. *Ackerman* (159 N. Y. 118), holding that the enactment of a new Statute of Limitations is unconstitutional as to existing causes of action if it fails to allow a reasonable time for the commencement of suits thereon after it takes effect, and that it is not enough if the act affords such an interval between its becoming a law and its taking effect. Under no circumstances, therefore, can the cause of action be barred against defendants Link by the adoption of section 47-a of the Civil Practice Act. But apart from the question of constitutionality, the second exception in subdivision 2 of section 47-a is broad enough to include the present case. It provides that " if, at the time this section takes effect, there remains of the time heretofore limited for the commencement of an action  *  *  * a period shorter than six years, such period shall not be enlarged by the enactment of this section." The word " enlarged " in this context is construed to mean changed. The effect is to permit the commencement of actions within the former limitation where that expires within six years after the effective date of section 47-a. Without this interpretation the second exception would serve no purpose. The period of limitation would be made to expire automatically upon the taking effect of the act, and there would be no point in providing that such period should not be enlarged by its enactment. This defense is also eliminated.